Blake Goodman
**Law Offices of Blake Goodman**
900 Fort St Mall Ste 910
Honolulu, HI 96813
Ph: (808) 528-4274
blake@debtfreehawaii.com
*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF HAWAII

| | |
|---|---|
| Anthony Perez,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Equifax Information Services, LLC;<br><br>　　　　Defendant(s). | **Case No.: 1:26-cv-48**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. FCRA, 15 U.S.C. § 1681 *et seq.* |

Plaintiff Anthony Perez ("Plaintiff"), by and through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax").

### **INTRODUCTION**

1. Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant. Plaintiff contends that the Defendant failed to follow reasonable procedures to assure maximum possible

1

accuracy in the preparation of Plaintiff's consumer reports and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3. Venue in the District of Hawaii is proper pursuant to 28 U.S.C. § 1391 because Equifax regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District given that Plaintiff resides in this district.

## PARTIES

4. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5. Plaintiff is a natural person who resides in the city of Honolulu, County of Honolulu, Hawaii.

6. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309.

8. During all times pertinent to this Complaint, Equifax was authorized to conduct business in the State of Hawaii and conducted business in the State of Hawaii on a routine and systematic basis.

9. Any violations by Equifax were not in good faith, were knowing, negligent, willful, and/or intentional, and Equifax did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

### *The Role of Credit Reporting Agencies*

10. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

11. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports

directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

12. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

13. Equifax is one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, who regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

14. The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15. Equifax's consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this

section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

16. Equifax obtains consumer information from various sources. Some consumer information is sent directly to Equifax, and other information must be independently gathered by Equifax, or acquired from third party providers, vendors or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

17. Equifax also obtains information from other CRAs, who commonly share information.

18. Equifax regularly seeks out and procures consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that Equifax sells to third parties for a profit.

19. The diligence Equifax exercises in uncovering and recording consumer bankruptcy filings is not replicated in Equifax's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

20. Equifax's unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

21. Equifax knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in its own files.

22. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Equifax) to make lending decisions.

23. The information Equifax includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

24. FICO Scores are calculated using information contained in Equifax's consumer reports.

25. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

26. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

27. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred,

and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

28. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

29. Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Equifax in consumer reports.

30. DTI compares the total amount a consumer owes to the total amount a consumer earns.

31. Equifax regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Equifax.

32. A consumer's income, however, is not included in their consumer report; only the amount of debt is included.

33. The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

34. Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance when that debt was discharged in a bankruptcy.

35. Equifax is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts are discharged.

36. However, Equifax regularly reports inaccurate information about consumers' debts after they receive a Discharge Order.

37. Rather than follow reasonable procedures to assure maximum possible accuracy, as is required by the FCRA, Equifax frequently reports information regarding pre-bankruptcy debts and post-bankruptcy debts based on incomplete or knowingly inaccurate information.

38. Equifax regularly publishes consumer information that conflicts with the information provided by data furnishers, included in Equifax's credit files, contained in public records that Equifax regularly access, and/or sourced through Equifax's independent and voluntary efforts.

39. Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

40. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Equifax for its inaccurate consumer

reporting following a Chapter 7 Bankruptcy Discharge, including failure to accurately report which debts were discharged.

41. Therefore, Equifax is on continued notice of its inadequate bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

*Plaintiff's Capital One, Mariner Finance, and Pentagon Federal Union Accounts and Chapter 7 Bankruptcy*

42. On or around September 9, 2017, Plaintiff opened an account with Capital One, hereinafter the "Capital One Account".

43. On or around May 19, 2022, Plaintiff opened an account with Mariner Finance, hereinafter the "Mariner Finance Account."

44. On or around November 4, 2022, Plaintiff opened a credit card account with Pentagon Federal Credit Union ("PenFed"), ending in 0545, hereinafter the "PenFed Account" and together with the Capital One Account and Mariner Finance Accounts, the "Accounts".

45. On or around June 13, 2023, Plaintiff filed a Chapter 7 Bankruptcy in the United States Bankruptcy Court in the District of Hawaii, petition no. 1:23-bk-00446.

46. Plaintiff's Accounts were included in his Chapter 7 Bankruptcy Petition.

47. Plaintiff received an Order of Discharge for his bankruptcy on September 12, 2023.

48. Because the Accounts were included in Plaintiff's Chapter 7 Bankruptcy filing, they were discharged when the Order of Discharge was entered.

### *The Inaccuracies on Equifax's Consumer Reports*

49. On August 20, 2025, Plaintiff obtained a copy of his credit report.

50. In the credit report, Equifax reported the Capital One Account with an outstanding balance and status of 60-89 days past due with no mention of "discharged in bankruptcy".

51. Furthermore, the Capital One Account contained late notations from May 2023-June 2025.

52. In the same credit report, Equifax reported the Mariner Finance Account with "Charge-Off" notations for every month from November 2023 through June 2025.

53. Similarly, Equifax reported the PenFed Account with "Charge-off" notations from March 2024 through June 2025.

54. Additionally, Equifax inaccurately reported the PenFed Account by reporting it with late payment notations between November, 2023–February 2024.

55. Equifax misrepresented the Capital One Account by reporting it with an open balance and stating it was a derogatory account with numerous late payment notations, when it was actually discharged in Plaintiff's Chapter 7 Bankruptcy.

56. Equifax further misrepresented the Mariner Finance and PenFed Accounts by reporting fresh adverse "Charge Off" history long after the debts were legally discharged, without any mention of discharged in bankruptcy.

57. This credit report was created after Plaintiff filed his Chapter 7 Bankruptcy and after Plaintiff received an Order of Discharge.

58. The name, social security number, and address in Plaintiff's Chapter 7 petition match the information listed on the consumer reports prepared by Equifax.

59. In addition, public records reflecting Plaintiff's bankruptcy filing and subsequent discharge are readily available to Equifax through multiple sources such as PACER, but Equifax failed to review those sources or knowingly rejected them.

60. Equifax prepared one or more consumer reports concerning Plaintiff after Plaintiff received an Order of Discharge from his Chapter 7 Bankruptcy.

61. However, Equifax failed to accurately report Plaintiff's Accounts as being discharged in Plaintiff's Chapter 7 Bankruptcy.

62. Upon information and belief, Equifax received notice of Plaintiff's bankruptcy discharge through its independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that

provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

63. Equifax also obtains information from other CRAs (who commonly share information).

64. Equifax is aware that CRAs are generally required to report accounts that were actually discharged in the bankruptcy proceedings as included and discharged in bankruptcy.

65. Equifax should have reported the Accounts as accounts that were discharged in Plaintiff's Chapter 7 Bankruptcy.

66. Equifax inaccurately reported the Accounts and failed to properly consider Plaintiff's Chapter 7 Bankruptcy and the effect it had on the relevant accounts.

67. Equifax knew or had reason to know that the reported information was contradicted by notices received from third parties as well as from the bankruptcy proceedings themselves.

68. If not patently inaccurate, Equifax's inaccurate reporting of the Accounts are materially misleading.

### *Plaintiff's Damages*

69. As a preliminary matter, Equifax failed to report the Capital One Account accurately because Equifax reported with an outstanding balance and a

status of 60-89 days past due when it was actually discharged in Plaintiff's Chapter 7 Bankruptcy.

70. Similarly, Equifax failed to report the Mariner Finance and PenFed Accounts accurately because Equifax reported them with fresh "Charge-Off" notations for every month in 2024 and through June 2025, despite both accounts being discharged in Plaintiff's Chapter 7 Bankruptcy

71. Plaintiff's creditworthiness is lowered because Equifax reported the Accounts as derogatory accounts.

72. As an individual attempting to improve his credit score for future credit transactions, the Plaintiff was harmed because of Equifax's inaccurate reporting of the Accounts

73. Equifax's consumer report failed to report the Accounts and Plaintiff's Chapter 7 Bankruptcy appropriately, which causes severe damage to Plaintiff's creditworthiness and his financial wellbeing.

74. Equifax's consumer credit file and consumer reports were reviewed by numerous entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by Equifax .

75. As a direct result of Equifax's inaccurate reporting and failure in investigating disputes, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

13

76. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I

### *VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)*

77. Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

78. Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like Equifax, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

79. Equifax negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy accounts after a consumer receives a Discharge Order.

80. Equifax received notice of Plaintiff's bankruptcy and discharge through public records, independent collection of consumer information directly obtained by Equifax through sources of consumer information such as Lexis-Nexis, Equifax's own files, and information provided by data furnishers, yet Equifax misapplied that information.

81. However, Equifax failed to report the Accounts accurately, by reporting it as either open or charged-off accounts when they were actually included and discharged in Plaintiff's Chapter 7 Bankruptcy.

82. Equifax's unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who file Chapter 7 Bankruptcies.

83. Equifax's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

84. Equifax's unreasonable policies, procedures and/or algorithms consistently fail to identify and update accounts that were actually included in a bankruptcy, as required by 15 U.S.C. § 1681e(b).

85. Equifax knows the information that it reports about consumers' bankruptcies is often inconsistent with public records and their own files.

86. Equifax's failure to maintain and employ reasonable procedures to assure the information it reports is accurate is particularly egregious because Equifax regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

87. Equifax knew or should have known that it is obligated, by the FCRA, to maintain and employ reasonable procedures to assure it reports maximally accurate consumer credit information.

88. Equifax knew or should have known that it is obligated, by the FCRA, to update its consumer reports and the relevant tradelines.

89. Equifax knew or should have known that the effect of a Discharge Order in Chapter 7 Bankruptcy is to discharge the statutorily dischargeable debts.

90. CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving Equifax.

91. Therefore, Equifax has ample notice of its obligations under the FCRA and its continued use of unreasonable procedures.

92. If Equifax contends that it did not have sufficient notice, Equifax must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file Chapter 7 Bankruptcies.

93. Equifax regularly conducts voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

94. When Equifax received notice of Plaintiff's bankruptcy information, it had an obligation to ensure that it reported Plaintiff's discharge and its effects with maximal accuracy.

95. Unfortunately, Equifax willfully and consciously breached its duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

96. Despite knowledge of its legal obligations, Equifax violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

97. Equifax knows that a debt that was discharged in bankruptcy should be reported as discharged on credit reports.

98. Equifax knew or should have known the information it reported about the Accounts were inaccurate.

99. Equifax violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Equifax knew or should have known that the information Equifax is reporting is inaccurate, and/or otherwise contradicted by information known by Equifax, reported to Equifax, and/or reasonably available to Equifax.

100. Equifax's violations of 15 U.S.C. § 1681e(b) were willful.

101. Alternatively, Equifax's violations of 15 U.S.C. § 1681e(b) were negligent.

102. Equifax's inaccurate reporting damaged Plaintiff's creditworthiness.

103. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Equifax for failing to

report the Accounts accurately, since they were accounts that were discharged in Plaintiff's bankruptcy.

104. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

105. Equifax is a direct and proximate cause of Plaintiff's damages.

106. Equifax's actions are substantial factor in Plaintiff's damages.

107. Therefore, Equifax is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant Equifax Information Services, LLC, for the following:

(a) Declaratory judgment that Equifax violated the FCRA, 15 U.S.C. § 1681e(b);

(b) An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c) An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)  An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

(e)  Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(f)  Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: February 2, 2026                Respectfully submitted,

/s/Blake Goodman
**Law Offices of Blake Goodman**
900 Fort St Mall Ste 910
Honolulu, HI 96813
Ph: (808) 528-4274
blake@debtfreehawaii.com
*Counsel for Plaintiff*